IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2008

## STATE OF TENNESSEE v. LANA BILLINGS HENRY

Appeal from the Criminal Court for Sullivan County
Nos. S53,756 and S53,757   Robert H. Montgomery, Judge

---

**No. E2007-02649-CCA-R3-CD - Filed July 28, 2008**

---

The Defendant, Lana Billings Henry, appeals from the sentencing decision of the Sullivan County Criminal Court.  In October 2007, the Defendant entered guilty pleas to multiple counts of forgery and theft.  Under the terms of the agreement, the Defendant received an effective six-year sentence as a Range II, multiple offender, and the manner of service was submitted to the trial court. Following a sentencing hearing, the trial court ordered the Defendant to serve her sentences in the Department of Correction.  On appeal, the Defendant argues that a sentence of community corrections was appropriate.  After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Deborah B. Lonon, Assistant Public Defender, Blountville, Tennessee, for the appellant, Lana Billings Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Greeley Wells, District Attorney General; and Amber Massengill, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

This case relates to the Defendant's guilty pleas and resulting sentences.  On August 28, 2007, a Sullivan County grand jury returned two separate presentments against the Defendant, case numbers S53,756 and S53,757.

In case number S53,756, the six-count presentment charged the Defendant with three counts of forgery involving less than $1,000.00 (Class E felonies), one count of forgery involving $1,000.00 or more but less than $10,000.00 (a Class D felony), one count of identity theft (a Class D felony), and one count of theft of property valued at $500.00 or less (a Class A misdemeanor).  See Tenn.

Code Ann. §§ 39-14-103 (theft), -114 (forgery), -150 (identity theft). The second presentment, case number S53,757, charged the Defendant with five offenses—three counts of forgery involving less than $1,000.00, one count of identity theft, and one count of theft of property valued at $500.00 or less.

On October 22, 2007, the Defendant pled guilty as charged in both cases. The underlying facts, as recited at the guilty plea hearing, are as follows:

> First, in S53,756, had this case gone to trial the State's proof would have been that on November 19th, 2006 the victim, [Brittany] Wills, was working at Bath and Body Works located in the Fort Henry Mall, Kingsport, Sullivan County, Tennessee on Fort Henry Drive. She had discovered that her wallet was missing and called her credit card company to notify them that it had been possibly stolen. She was alerted that the credit card was being used, or had been used, at the mall on that same date. The [D]efendant . . . was also training, or was training at that same store, Bath and Body Works, where the victim worked and was working on that date. At some point . . . the [D]efendant[] was flagged by management and loss prevention put her on the telephone with someone from another office and they tape-recorded a confession—them taking a statement from her essentially stating what she had done.

> The credit card was used at [T]he Deb Shop in the amount of [$101.79], at [Proffitt's] in the amount [$52.01], at [Aeropostale] for [$79.29] and for the forgery over $1,000.00 at Kay Jewelers in the amount of $1,773.94. It was used all on November 19th, 2006, it was a Capital One credit card. She signed the victim's name without the victim's consent and . . . the theft charge arose out of actually taking the wallet, all the above occurring in Sullivan County on that case.

> In S53,757 the State's proof would have been that on December 3rd, 2006 the victim, Peggy Bailey, found that her debit card was missing from her home located at 664 Bancroft Chapel Road, Sullivan County, Tennessee. After checking her balance she discovered that funds were missing from her bank account. She notified the bank and again, the [D]efendant, at some point became a suspect in this case. Before doing that she actually notified she knew Peggy Bailey personally and Peggy Bailey kind of had been taking her under her wing and the [D]efendant called her and apologized for stealing her debit card and also stated that she had taken about $100.00 in cash, she did this in a card that she had written, from her purse. She told the victim that she needed the money to pay her parole officer. She later returned the victim's card cut up inside a greeting card and apologized again for taking that credit card. She used the credit card three times on December 3rd, 2006, each time at Wal-Mart, 2500 West Stone Drive, Kingsport, Sullivan County, each within about 14 minutes of each other in the amounts of $102.57, $42.57, $22.56. She did not have the victim's PIN number on this account so she had to use it as a credit card and on each occasion signed the victim's name without the victim's consent. Again, the theft being the taking of the credit card, or the debit card in that case, all the above occurring in Sullivan County.

The plea agreement provided for an effective six-year sentence as a Range II, multiple offender—two years for each of the Class E felony forgeries, six years for the Class D felony forgery, six years for both counts of identity theft, and eleven months and twenty-nine days for each theft conviction. All sentences were to be served concurrently with one another and consecutively to two prior cases, S44,424 and S45,171. The manner of service of the sentence was left to the discretion of the trial court.

A sentencing hearing was held on the same date following the Defendant's guilty pleas. The twenty-six-year-old Defendant testified on her own behalf. At the time of the hearing, she was serving a nine-and-half-year sentence for theft, identity theft, and two forgeries. The Defendant stated that she committed those offenses because she "was on Oxycontin and Morphine and Dilaudid" and that she pled guilty to those charges in 2001. She stated that she had been paroled for these convictions on March 9, 2004, and that the sentence did not expire until 2009. The Defendant relayed that, after being paroled, she "was doing good until" she met Peggy Bailey and she then started using drugs again. According to the Defendant, she had passed drug screens while on parole.

The Defendant testified that she cut up the card, returned it, and apologized to Ms. Bailey. She acknowledged that she made charges to the card and took money from Ms. Bailey. When asked why she did such things, she replied that she had an addiction and was "really bad hooked on drugs." She also asserted that she attempted to repay Ms. Bailey some of the money. Finally, she admitted that she took Brittany Wills' credit card and wallet and that she confessed when confronted by mall security and then later to police.

After these incidents, she "ended up in rehab." According to the Defendant, she overdosed on forty pills ("Clonapins and . . . seizure medication"). She stayed in treatment for thirty days, receiving several merit certificates. She testified that she was supposed to stay in treatment for three months but that she was removed and returned to jail to serve her parole violation. The Defendant admitted to the parole violation.

When asked why she would be a good candidate for alternative sentencing given that she had failed to comply with the conditions of her parole, she replied, "All the things I've went through here lately is, one. I mean it's been a lot harder this time around than what it was on my first time, and along with my son." She then testified that she had a six-year-old son, who lived with her parents, and that she had been in prison much of his life. She also confirmed that, if released, she could reside with her parents, who desired for her to continue rehabilitation and treatment.

In addition to counseling and twelve-step meetings, she also had a job waiting for her at Kentucky Fried Chicken restaurant. She did not have a high school diploma or GED. Furthermore, she requested to be transferred to Johnson County jail in Mountain City, where she could attend GED classes and twelve-step meetings.

At the conclusion of the sentencing hearing, the trial court ordered the Defendant to serve her sentence in Department of Correction. It is from the sentencing decision of the trial court that the Defendant appeals.

**ANALYSIS**

The Defendant argues that the trial court erred in failing to grant her a sentence of community corrections. She argues that under the "special needs" provision of the statute, Tennessee Code Annotated section 40-36-106(c), she is entitled to community corrections based on her "chronic drug abuse, together with her mental health issues . . . ."

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001) When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court form which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Stacey Joe Carter, -- S.W.3d --, No. M2005-02784-SC-R11-CD, 2008 WL 2081247, at *8 (Tenn. May 19, 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant fact and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 2008 WL 2081247, at *8.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 2008 WL 2081247, at *7 (Tenn. May 19, 2008); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation. Carter, 2008 WL 2081247, at *10.

The following considerations provide guidance regarding what constitutes "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also Carter, 2008 WL 2081247, at *11.  Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.  Tenn. Code Ann. § 40-35-103(2), (4).  The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.  Tenn. Code Ann. § 40-35-103(5).

The Defendant was sentenced as a Range II, multiple offender and, thus, she should not be considered a favorable candidate for alternative sentencing.  See Tenn. Code Ann. § 40-35-102(6).  Moreover, the Defendant has a criminal history evincing a clear disregard for the laws of society and a failure of past efforts at rehabilitation.  See Tenn. Code Ann. § 40-35-103(1)(A), (C).  However, she argues that she is eligible for placement in a community corrections program.

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders."  Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).  Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

(A) Persons who, without this option, would be incarcerated in a correctional institution;
(B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
(C) Persons who are convicted of nonviolent felony offenses;
(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1).  However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria.  See Tenn. Code Ann. § 40-36-106(a)(2).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

Because the Defendant, by her own admission, was incarcerated at the time of sentencing, she was not eligible for community corrections under subsection (a). Nonetheless, she argues that she is eligible, under subsection (c), on the basis that her drug abuse is a "special need."

Under subsection (c), if the Defendant is statutorily ineligible for probation, she is per se ineligible for community corrections on a "special needs" basis. State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); State v. Grisby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). An offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of a few specified offenses. Tenn. Code Ann. § 40-35-303(a). Under the plea agreement, no individual sentence was greater than six years and, therefore, the Defendant would be eligible for probation. Accordingly, we must determine whether the Defendant meets the other requirements of subsection (c). A determination that the Defendant is suitable for placement in the program requires the following findings of fact: (1) that the offender has a history of chronic alcohol, drug abuse, or mental health problems; (2) that these factors were reasonably related to and contributed to the offender's criminal conduct; (3) that the identifiable special need (or needs) are treatable; and (4) that the treatment of the special need could be served best in the community rather than in a correctional institution. Boston, 938 S.W.2d at 439.

The record supports the trial court's finding that the Defendant would be unlikely to comply with the requirements of a community corrections sentence. We agree with the trial court that, given the Defendant's extensive criminal history, her drug problem would best be treated in a correctional facility. The Defendant has a long history of criminal conduct rendering confinement necessary to protect society from additional criminal behavior by the Defendant. The presentence report indicates prior convictions for forgery, theft, identity theft, felony failure to appear, fraudulent use of credit card, violation of the bad check law, and evading arrest. Furthermore, measures less restrictive than confinement have been repeatedly and unsuccessfully applied to the Defendant. The Defendant was granted "Title 40"[1] on a theft conviction in Bristol General Sessions Court in 1999. Multiple petitions were filed to revoke her "Title 40" sentence due to her failure to comply with the conditions of her release. The Defendant was convicted of five counts of forgery and two counts of fraudulent use of a credit card in January 2001, and she was placed on probation. Her probation was revoked following the commission of theft, identity theft, and two forgeries in February 2001, and due to the fact that she tested positive for marijuana while on bond supervision. She was incarcerated and paroled in 2004. The Defendant was on parole at the time she committed the present offenses. Accordingly, we agree with the trial court that the Defendant is unsuitable for community corrections. See State v. Michael E. Bunting, No. E2005-00321-CCA-R3-CD, 2006 WL 1994573,

---

[1] We surmise that "Title 40" refers to a local sentencing alternative to incarceration.

at *6 (Tenn. Crim. App., Knoxville, July 18, 2006), perm. to appeal denied, (Tenn. Nov. 13, 2006); State v. Donald E. Bryant, No. E2002-00690-CCA-R3-CD, 2003 WL 934243, at *4 (Tenn. Crim. App., Knoxville, Mar. 10, 2003).

## CONCLUSION

Based upon the foregoing, we conclude that the Sullivan County Criminal Court's decision denying the Defendant a sentence of community corrections was proper. The sentencing decision is affirmed.

_____
DAVID H. WELLES, JUDGE